IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| RBC DAIN RAUSCHER INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-6109-CV-SJ-HFS |
| | ) |
| FARMERS STATE BANK OF | ) |
| NORTHERN MISSOURI, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Defendant Farmers State Bank of Northern Missouri, Inc. (Farmers) has filed a motion to stay this action during the pendency of a NASD arbitration that plaintiff RBC Dain Rauscher Inc. (RBC Dain) filed against five securities brokers and a securities broker-dealer. Farmers characterizes the NASD arbitration as a "parallel" proceeding to this case, involving common questions of law and fact. RBC Dain opposes a stay, arguing that it has separate and independent causes of action against Farmers, and that Farmers is not a party to the arbitration, nor will it be bound by the arbitration decision. For the reasons outlined below, Farmers' motion to stay will be granted. RBC Dain's motion for leave to file a surreply in further opposition to a stay will be granted.

**I.      Background**

RBC Dain is a securities broker-dealer with a branch office in St. Joseph, Missouri. In its complaint against Farmers, RBC Dain alleges that from June through August 2005, Farmers raided

its St. Joseph, Missouri office by hiring away five brokers[1] and three support and operations employees – the office's entire staff. Farmers is not a registered securities broker-dealer and cannot engage in securities transactions on behalf of its customers. So Farmers partnered with Raymond James Financial Services, Inc. (Raymond James), a registered securities broker-dealer that holds and manages the accounts of Farmers' securities customers. All five brokers Farmers hired are now registered representatives of Raymond James.

RBC Dain alleges that when the brokers and support staff moved to Farmers, they took confidential information with them and used that information to gain the business of RBC Dain's customers. RBC Dain's complaint, filed September 29, 2005, alleges that Farmers (1) misappropriated trade secrets (namely confidential customer information), (2) aided and abetted breaches of fiduciary duties by two brokers (Utley and Sinclair), (3) committed various acts of unfair competition, (4) interfered with two brokers' confidentiality/non-solicitation agreements (Eggebrecht and Anderson), and (5) interfered with RBC Dain's advantageous economic relationships with its clients.

On September 30, 2005, RBC Dain filed a NASD arbitration proceeding against the five brokers hired by Farmers and against Raymond James.[2] In the arbitration, RBC alleges that (1) the

---

[1]The brokers (formerly registered representatives of RBC Dain) were Charles William Sinclair, James Terry Utley, Donald Roger Eggebrecht, Donald Kent Anderson, and Richard Allen Heck.

[2]The NASD's Code of Arbitration Procedure provides for compulsory arbitration of disputes between NASD members, as well as disputes between members and their employees arising out of their employment or termination of employment. RBC Dain, the five brokers and Raymond James are all NASD members, so their dispute must be arbitrated. Farmers is not a NASD member, so it is not subject to and could not be compelled as a party to the NASD arbitration.

Case 5:05-cv-06109-HFS   Document 17   Filed 06/20/06   Page 2 of 9

brokers and Raymond James misappropriated trade secrets, (2) brokers Utley and Sinclair breached fiduciary their duties, (3) Raymond James aided and abetted Utley and Sinclair's breaches of their fiduciary duties, (4) Raymond James engaged in unfair competition, (5) the brokers and Raymond James interfered with RBC Dain's advantageous economic relationships with its clients, (6) broker Eggebrecht breached his confidentiality/non-solicitation agreement, (7) broker Anderson breached his confidentiality/non-solicitation agreement, and (8) Raymond James interfered with Eggebrecht's and Anderson's confidentiality/non-solicitation agreements.

## II. Legal Standards

Congress passed the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The Act reflects a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Under certain circumstances, federal courts are directed to stay litigation pending arbitration. Section 3 of the Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. In the usual case, the party seeking a mandatory stay under Section 3 is a signatory to the arbitration agreement, as is the opposing party. When nonsignatories to the arbitration agreement are parties to the lawsuit to be stayed, the issue is somewhat more complicated. The Eighth Circuit has suggested that Section 3 "is broad enough to permit the stay of litigation between nonarbitrating parties as long as the lawsuit is based on issues referable to arbitration under an

3

arbitration agreement governed by the Arbitration Act." Contracting Northwest, Inc. v. City of Fredricksburg, Iowa, 713 F.2d 382, 387 (8th Cir. 1983).

Here, a nonsignatory to the arbitration agreement is the party seeking a stay. In AgGrow Oils, L.L.C. v. National Union Fire Ins. Co., the Eighth Circuit found that a nonsignatory to an arbitration agreement was not entitled to a mandatory stay under Section 3. 242 F.3d 777, 782 (8th Cir. 2001). But the Court stated that a district court has "discretion to stay 'third party litigation that involves common questions of fact that are within the scope of the arbitration agreement.'" 242 F.3d at 782 (quoting Contracting Northwest, 713 F.2d at 387). See also City of Bismarck v. Toltz, King, Duvall, Anderson & Assocs., Inc., 767 F.2d 429, 433 (8th Cir. 1985)[3] ("the district court had the inherent power to grant the stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it").[4]

### III. Analysis

As noted, the case law in this circuit certainly enables a district court to stay litigation against a non-party to an arbitration. Although there is support for imposing a mandatory stay pursuant to Section 3 of the Arbitration Act under such circumstances, the court finds that consideration of a discretionary stay is more appropriate.

---

[3]RBC Dain's attempt to factually distinguish the cases of AgGrow, Contracting Northwest and City of Bismarck is unavailing.

[4]City of Bismarck also favorably cited the following passage from American Home Assur. Co. v. Vecco Concrete Const. Co. Inc., 629 F.2d 961, 964 (4th Cir. 1980): "While it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action."

4

In AgGrow, the Eighth Circuit noted that in complex, multi-party disputes, courts should weigh the following factors in determining whether to grant a discretionary stay of nonarbitrable claims in a case pending a related arbitration: (1) the risk of inconsistent rulings; (2) the extent to which the parties will be bound by the arbitrators' decision; and (3) the prejudice that may result from a stay. AgGrow, 242 F.3d at 783. The court will address the second factor, followed by the first and third factors.

With regard to the second factor, Farmers argues that RBC Dain may be bound by the arbitrators' decision. Farmers contends that RBC Dain may be collaterally estopped from relitigating various issues pending in the arbitration.[5] For purposes of collateral estoppel, an arbitration award may constitute a final judgment. Val-U Const. Co. v. Rosebud Sioux Tribe, 146 F.3d 573, 581 (8th Cir. 1998) (citing American Fed'n of Television and Radio Artists Health and Retirement v. WCCO Television, Inc., 934 F.2d 987, 991 (8th Cir. 1991). "Under the doctrine of collateral estoppel, an arbitrator's findings will bind a court if '(1) the issue is identical to one in the prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party . . . to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.'" American Fed'n, 934 F.2d at 991 (quoting City of Bismarck, 855 F.2d at 582).

At the outset, the court notes that the claims against Farmers in this case and the claims against the brokers and Raymond James in the arbitration are intertwined and involve many of the

---

[5]Specifically, Farmers advances the doctrine of defensive collateral estoppel. "Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party." United States v. Mendoza, 464 U.S. 154, 159 n.4 (1984).

5

same factual and legal issues. Farmers argues that RBC Dain must prove many of the matters at issue in the arbitration as precursors to establishing Farmers' liability in this case. Four of RBC Dain's five claims in this case (Counts 1, 2, 4 and 5) have as an element certain activity by the departing brokers, such that those claims apparently depend on underlying proof of the brokers' wrongdoing. For example, to prove Farmers misappropriated trade secrets (Lawsuit Count 1), RBC Dain must first prove that the brokers took trade secret information from RBC Dain and misappropriated that information for use at Farmers (Arbitration Count 1). Similarly, to prove Farmers aided and abetted breaches of fiduciary duties of two brokers (Lawsuit Count 2), RBC Dain must first prove that those brokers breached the fiduciary duties (Arbitration Count 2).[6]

In response, RBC Dain first argues that it is not possible to determine the preclusive effect of an arbitration until after the arbitration has ended. RBC Dain also argues that the arbitrators' decision may not contain specific findings of fact and instead may merely state a conclusion with little or no explanation or rationale. Lastly, RBC Dain argues that the elements of collateral estoppel may not be satisfied. The court is not convinced that the unknown outcome of the arbitration is a reason to deny a stay. Whether or not the arbitrators provide specific findings of fact, their decision will necessarily rule on the claims being arbitrated. And because several claims in arbitration are precursors and elements of RBC Dain's claims against Farmers, there is a very real likelihood that the arbitration decision as to certain issues may be binding on RBC Dain under the doctrine of

---

[6]Likewise, to prove that Farmers interfered with two brokers' confidentiality/non-solicitation agreements (Lawsuit Count 4), RBC Dain must first prove that the agreements were breached (Arbitration Counts 6 and 7). Finally, to prove that Farmers interfered with RBC Dain's advantageous economic relationships with its clients (Lawsuit Count 5), RBC Dain must first prove that the brokers, acting on behalf of Farmers, interfered with those relationships (Arbitration Count 5).

6

defensive collateral estoppel.  Therefore, this factor weighs in favor of a stay.

As to the first factor, Farmers argues that there is a risk of inconsistent rulings.  Farmers contends, for instance, that in the absence of a stay, the arbitrators could conclude that the brokers did not take trade secret information and rule against RBC Dain on its misappropriation claim, while the factfinder in this case could conclude that the brokers did take trade secret information and find in favor of RBC Dain on its misappropriation claim against Farmers.  The same is true as to each issue of the brokers' conduct that constitutes a precursor to the claims against Farmers.  RBC Dain does not specifically refute this argument.  The court finds that because of the interrelated nature of the issues to be arbitrated and the claims against Farmers (as discussed at length above), the risk of inconsistent rulings weighs in favor of staying litigation.

With regard to the last factor, Farmers argues that RBC Dain will not be prejudiced by a stay because RBC Dain's complaint does not seeking temporary injunctive relief.  In response, RBC Dain argues that a stay would deprive it of "the right to protect its vital business interests." Although a stay of this case will no doubt delay the adjudication of RBC Dain's claims against Farmers, the court is not convinced that any prejudice RBC Dain may claim is significant.[7]

Having considered the AgGrow factors, the court concludes that they all weigh in favor of

---

[7]Discovery in NASD arbitrations is streamlined such that depositions and interrogatories are typically not permitted.  See NASD Discovery Guide, Ex. 5 to Motion to Stay.  Farmers argues that a stay of litigation would prevent RBC Dain from using discovery in this case to aid in its arbitration.  It would be unfair, Farmers argues, for RBC Dain to engage in such discovery while Raymond James and the brokers could not.  In response, RBC Dain argues that it needs such discovery to defend itself if Raymond James and the brokers try to "divert the arbitration panel's attention to the conduct of Farmers as a defensive measure."  The court finds that any prejudice to RBC Dain is a function of the NASD arbitration discovery rules.  In any event, RBC Dain's discovery concerns are not serious enough to override the reasons set out in this opinion militating in favor of a stay.

staying this case pending the NASD arbitration.  A recent decision from another division of this court also supports a stay under such circumstances.

In a factually similar case, Judge Richard E. Dorr issued an order staying litigation against the defendant bank that hired away certain brokers who had been employed by the plaintiff bank (a broker-dealer), pending resolution of plaintiff's claims against the brokers in a NASD arbitration. U.S. Bancorp Investments, Inc. v. Signature Bank, Inc., et al., Case No. 05-3418-CV-RED, slip op. (Oct. 31, 2005).[8]  As in the present case, U.S. Bancorp involved allegations that the defendant bank raided the plaintiff bank's entire brokerage group.  The lawsuit included alleged claims for breaches confidentiality/non-solicitation agreements, breaches of fiduciary duties, unfair competition, etc.; the arbitration involved related claims drawing on essentially the same set of facts.  Just as in the case at bar, the defendant bank was not a NASD member and was not a party to the arbitration, but nonetheless moved to stay the litigation pending arbitration.

In addition to the defendant bank, five other individuals were named as defendants, three of which were brokers and parties to the arbitration.  The parties were in agreement that litigation must be stayed against the three brokers (NASD members) who were named in the arbitration.  Therefore, the court's stay analysis focused on the propriety of staying litigation against the non-arbitrating defendants – the defendant bank and the two defendants who were not NASD members.  Relying on AgGrow and Contracting Northwest, Judge Dorr wrote: "Due to the nature of the claims asserted against Defendant Signature Bank and Defendants Breeden and Murray, the claims are so intertwined the risk of inconsistent verdicts is apparent. . . .  Moreover, to continue with this case while arbitration is pending would not be in the interests of judicial economy or preventing

---

[8]The order was signed on October 28, 2005, but was not docketed until October 31, 2005.

potentially unnecessary litigation." Slip Op. at 2. The very same rationale applies here.

The court finds that Judge Dorr's decision in U.S. Bancorp is sound and should be followed, especially given the significant similarities between that case and this one. Contrary to RBC Dain's assertion, the court is not convinced that the U.S. Bancorp decision should be distinguished because that case involved some defendants were parties to the arbitration and some who were not. The bottom line in both cases is the same – the defendant banks' liability depends upon the conduct and actions of the departing brokers, which are necessary precursors to the claims against the banks. Because the arbitration will determine issues regarding the wrongfulness of the brokers' conduct and actions, it makes sense to wait for the arbitration decision before going forward with litigation in this case.

In conclusion, because this case undeniably "'involves common questions of fact that are within the scope of the arbitration agreement,'" AgGrow, 242 F.3d at 782, the court will exercise its discretion to stay litigation pending the NASD arbitration. Accordingly, it is hereby

ORDERED that Farmers' motion to stay (ECF doc. 6) is GRANTED. All proceedings in this case are hereby stayed pending the NASD arbitration in question. It is further

ORDERED that RBC Dain's motion for leave to file a surreply (ECF doc. 16) is GRANTED. The surreply submitted with the motion is deemed filed. It is further

ORDERED that RBC Dain shall file a status report with the court upon the conclusion of the NASD arbitration or within four months of this order, whichever comes first.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

June 20, 2006
Kansas City, Missouri